**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

APR 16 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| JOSE GUILLEN-ORTIZ, | No. 18-73449 |
| Petitioner, | Agency No. A209-406-453 |
| v. | |
| WILLIAM P. BARR, Attorney General, | MEMORANDUM* |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted March 3, 2020
San Francisco, California

Before: SILER,** WARDLAW, and M. SMITH, Circuit Judges.

Jose Guillen-Ortiz ("Guillen") petitions for review of the Board of

Immigration Appeals' (BIA) decision affirming his competency to participate pro

se in his removal proceedings, and denying his application for asylum, withholding

of removal, and protection under the Convention Against Torture (CAT). We have

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Eugene E. Siler, United States Circuit Judge for the
U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

jurisdiction under 8 U.S.C. § 1252(a)(1). We grant the petition for review and remand for a new competency determination and removal proceedings consistent with that determination.

When Guillen was first taken into Immigration and Customs Enforcement (ICE) custody, a nurse conducted an initial screening that found that he reported hearing voices. The nurse therefore referred Guillen to a psychologist for further evaluation. The psychologist completed what he described as an "initial psychological evaluation" of Guillen, which found that although Guillen was "fairly adjusted" to his institutional setting, he was "a poor historian, repeats [the] same thing over and over" and otherwise had a "mildly disorganized" thought process. The psychologist explicitly "deferred" an official diagnosis to a later date.

At an initial hearing a few days later, the Immigration Judge (IJ) stated that she had "bona fide doubts" as to Guillen's competency in light of initial indicia of mental illness, and referred him for a competency hearing. After the initial hearing and before the competency hearing, the Department of Homeland Security (DHS) sent an email to an employee at Geo Group, the private company running Guillen's detention center, and requested that the employee "complete, sign and return the attached . . . [ICE Health Service Corps] Form 883[] Mental Health Review . . . and/or send a copy of the detainee's medical records" to DHS "no later than 7 days

from this request."[1]  One day later, DHS submitted this email, along with notes from the nurse's screening and the psychologist's initial evaluation, to the immigration court.

This record shows that the government was "providing ongoing medical care" to Guillen or that further medical review was necessary.  *Calderon-Rodriguez v. Sessions*, 878 F.3d 1179, 1183 (9th Cir. 2018).  Yet, when Guillen appeared unrepresented at his competency hearing two days after DHS had emailed Geo Group requesting medical information or documents, the IJ failed to request any additional medical evidence in the government's possession.  Instead, after only asking Guillen a series of questions, the IJ deemed Guillen competent.

"[B]y not assuring that DHS had provided [Guillen's] most recent medical records [and] diagnoses . . . the IJ was unable to evaluate whether . . . [Guillen was competent to] meaningfully participat[e] in his . . . immigration proceedings, and so violated '[*Matter of*] *M-A-M-*, [25 I. & N. Dec. 474, 479–80 (BIA 2011),]'s rigorous procedural requirements."  *Calderon-Rodriguez*, 878 F.3d at 1183–84 (quoting *Mejia v. Sessions*, 868 F.3d 1118, 1122 (9th Cir. 2017)).  "The IJ therefore erred, and the BIA abused its discretion in affirming the IJ's decision."

---

[1] A Form 883 is typically "completed by a medical professional employed or retained by DHS."  162 Am. Jur. Trials § 87 (2019). "That form may include notations regarding the respondent's diagnosis, symptoms, current treatment and functioning, and health history."  *Id.*

*Id.* at 1184; *see also Alphonsus v. Holder*, 705 F.3d 1031, 1044 (9th Cir. 2013) ("It is a well-settled principle of administrative law that an agency abuses its discretion if it clearly departs from its own standards." (internal quotations omitted)).

The government excuses the IJ's error by arguing that because Guillen was referred to a competency hearing on the basis of reported mental *illness*, the IJ did not have any duty to inquire into evidence relating to Guillen's overall mental *competency*. However, both *Matter of M-A-M-* and *Franco-Gonzalez v. Holder*, No. CV-10-02211 DMG (DTBx), 2014 WL 5475097 (C.D. Cal. Oct. 29, 2014), require the IJ to inquire into competency more broadly, beyond just mental illness. *See, e.g.*, *Matter of M-A-M-*, 25 I. & N. Dec. at 480 (explaining that even if a respondent is deemed "medically competent," the IJ should be on guard for additional indicia of incompetency beyond just mental illness); *Franco-Gonzalez*, 2014 WL 5475097 at *6 (defining an incompetent respondent to include a person with an "[i]ntellectual [d]isability"). Thus, the IJ had a duty under both *Matter of M-A-M-* and *Franco-Gonzales* to inquire about, and review, all medical evidence relevant to Guillen's competency that the record suggests DHS has or will have in its possession. The IJ erred by failing to do so.

Accordingly, we **GRANT** the petition for review, **VACATE** the prior decisions denying Guillen's request for relief from removal, and **REMAND** to the BIA so that it may remand to an IJ for a new competency hearing based on current

mental health reviews and medical records, as well as any other relevant evidence.